# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| STACY ANICE SALISBURY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:13-00147 |
| v. ) | Senior Judge Haynes |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Stacy Salisbury, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On November 19, 2010, Plaintiff Stacy Salisbury applied for Disability Insurance Benefits (DIB) for a disability with the alleged onset date of February 1, 2010. Id. at 130-133. Plaintiff's claim was denied on February 25, 2011, and she applied for reconsideration. Plaintiff's request for reconsideration was denied on June 28, 2011. Following this decision, Plaintiff requested a review. Id. at 7-9. An Administrative Law Judge ("ALJ") held an evidentiary hearing on Plaintiff's application on March 30, 3012, and her claim was denied on June 5, 2012. Plaintiff's request for review was denied on September 20, 2013. Id. at 1-6.

After the evidentiary hearing, the ALJ evaluated Plaintiff's claim for DIB benefits using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 6, Administrative Record at 14-15). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since her amended alleged onset date of February 1, 2010. Id. at 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, obesity, chronic pain, major depressive disorder, and anxiety disorder. Id. at 15-16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ did not find any physician who determined that Plaintiff's impairments met or medically equaled a listed impairment, and did not find that Plaintiff had "marked" limitations or repeated episodes of decompensation. Id. at 16. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: frequent, but not repetitive bilateral handling and fingering of objects; avoidance of concentrated exposure to the operational control of moving and hazardous machinery and unprotected heights; avoidance of even moderate exposure to extreme cold; the ability to perform simple and detailed, routine and repetitive tasks in work that is goal oriented rather than production rate or pace work; the ability to sustain occasional brief and superficial interaction with the public and frequent brief and superficial interaction with coworkers and ordinary supervision. Id. at 17. At step five, the ALJ utilized the testimony of the vocational expert to conclude that although Plaintiff is not capable of performing past relevant work, she can perform certain other work. Id. at 24. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Id. at 25.

Before the Court is Plaintiff's Motion for Judgment on the Administrative Record. (Docket No. 9) contending that the ALJ erred by: (1) improperly evaluating Plaintiff's credibility; (2) failing to give proper credit to the opinions of Plaintiff's treating physicians, Drs. Rodriguez and Bart; and (3) failing to take into account Plaintiff's obesity. (Docket No. 19-1). Accordingly, Plaintiff

maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. Id.. In her response, the Commissioner argues that the ALJ properly evaluated the proof and the decision denying Plaintiff benefits is supported by substantial evidence. (Docket No. 12). Plaintiff's reply challenges the Commissioner's argument. (Docket No. 16). .

**A. Review of the Record**

According to the Administrative Record, on February 19, 2010, Plaintiff was evaluated by her treating physician, Dr. Belinda Bart, for a PAP smear. Id. at 274-275. Dr. Bart noted that Plaintiff "continue[d] to have multiple joint pain and quite a bit of fatigue," and prescribed Alprazolam [Xanax]. Id. Dr. Bart previously conducted a PAP smear on January 6, 2009, during which she did not note any complaints from Plaintiff and did not prescribe any medications. Id. at 275. Prior to that, Dr. Bart conducted a PAP smear on January 3, 2008, during which she noted "fibromyalgia" and prescribed Lyrica, a drug that treats nerve and muscle pain. Id. at 276.

On September 15, 2010, Plaintiff was evaluated at the Rapid Care Clinic with complaints of abdominal pain. Id. at 255. The nurse noted that the pain "was sudden in onset, occur[r]ed intermittently, has remain[ed] unchanged over time." Id. Plaintiff was noted to have tried over the counter medications with no success, was prescribed Zantac, and had a gallbladder test the following day. Id. at 258. On October 25, 2010, Plaintiff was again evaluated at the Rapid Care clinic for abdominal pain. Id. at 283. The nurse observed, "[a]ll diagnostic tests were negative. Treatments tried: prescription medications (zantac) with no relief" [Zantac treats heartburn]. Id. The nurse also noted "fibromyalgia" under "prior surgeries," and prescribed Pepcid. Id. at 285.

Plaintiff also consulted with the Rapid Care Clinic regarding weight loss. On May 3, 2010, October 15, 2010, September 17, 2010, April 5, 3011, May 5, 2011, June 14, 2011, and

July 21, 2011, Plaintiff was evaluated at the clinic. Id. at 240-243, 244-246, 267-270, 418-420, 415-417, 412-414, 409-411.

On January 12, 2011, Dr. Darrel Ray Rinehart examined Plaintiff. Id. at 320-322. Dr. Rinehart wrote that Plaintiff provided "a history of chronic pain having been diagnosed with fibromyalgia a number of years ago. In addition to the pain, she complains of a lot of fatigue and exhaustion which she states is almost worse than the pain." Id. at 320. Dr. Rinehart concluded, "[s]he had a very unremarkable physical exam. She performed all maneuvers without difficulty. It is my feeling based on examination and observation at this time that she has no impairment related physical limitations." Id. at 322.

Dr. Charles Settle, a consultant, reviewed Plaintiff's medical records on January 25, 2011 by. Id. at 324-333. Dr. Settle concluded, "[c]laimant['s]allegations of pain, fatigue and limitations are partially credible. There is evidence of fibromyalgia in file which could reasonably cause pain, fatigue and functional limitations. However, claimant statement regarding function and severity are not fully consistent with the objective evidence in file. Currently, claimant has normal [range of motion], strength and mobility." Id. at 331. With regard to the RFC, Dr. Settle wrote, "RFC is reduced due to pain, fatigue and objective [findings]. Therefore, claimant appears capable of sustaining RFC of [can lift 50lbs occasionally, 25lbs frequently, can stand or walk for six hours in a day, and can sit for six hours in a day], [ability to climb, balance, stoop, kneel, crouch and crawl frequently]." Id.

On February 7, 2011, Dr. Deborah Doineau, Plaintiff's treating physician, completed a Medical Source Statement. Id. at 333-335. On this assessment, Dr. Doineau checked "yes" after the question "[i]s the ability to understand, remember, and carry out instructions affected by the

4

impairment?" A "mild" restriction is indicated for "carry[ing] out simple instructions," "understand[ing] and remember[ing] complex instructions," and "carry[ing] out complex instructions" (which is also marked as a "moderate" restriction). Id. at 333. In this section, Dr. Doineau has written the comment, "[this] claimant has been diagnosed with fibromyalgia but the onset of her depression and anxiety date back to her mother's death in 2008. She has difficulty with concentration and some issues with remembering. It appears as though many of these symptoms are secondary to fatigue associated with fibromyalgia but also seem to be related to anxiety and depression." Id. Next, the question "[i]s the ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting, affected by impairments?" is answered "yes." Id. at 334. A "moderate" restriction is noted for "interact[ing] appropriately with the public," and "respond[ing] appropriately to usual work situations and to changes in a routine work setting" is marked as both a "mild" and a "moderate" restriction. Dr. Doineau wrote here, "[t]his claimant becomes anxious around crowds of people and is avoidant of crowded areas as a result. She gets along with others. She is able to drive out of town, cook, clean, attend church and bible study, and pay bills for the family and her husband's business. Although she has made mistakes in the process of managing her husband's bank account, her anxiety and depression do not preclude her ability to perform these tasks although she is not as functional as she was premorbidly." Id.

The record also contains a mental health examination from the same day, also conducted by Dr. Doineau. Id. at 334-340. Dr. Doineau diagnosed Plaintiff with "major depressive disorder, recurrent, moderate; panic disorder with possible mild agoraphobia; obsessive compulsive tendencies; possible somatization tendencies." Id. at 340.

George David, Ph.D., a psychologist, conducted a file review on February 24, 2011. Id. at 342-359. In this assessment, the diagnoses of "MDD" [major depressive disorder], "panic [disorder], mild agoraphobia," and "[rule out] somatization tendencies" are written. Id. at 345-347. As to restrictions, "restriction of activities of daily living" is marked "mild," and "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence, or pace" are both marked "moderate." Id. "Moderate limitations" were given to Plaintiff's ability to "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "to interact appropriately with the general public." Id. at 356-357. The assessment concluded, "claimant's allegations credible as the MDD could reasonably produce the stated symptoms and moderate functional limitations as opined by panelist given great weight." Id. at 354. .

On March 7, 2011, Dr. Bart requested a consult for Plaintiff with Dr. Robert McClure. Id. at 368-370. Dr. McClure wrote, "[p]atient with some abdominal pain and discomfort, but this may just be irritable bowel. I guess that it is conceivable that she could have something else going on. I guess that she could possibly have some malabsorptive issues, celiac disease, etc. It may just simply be that she is under more stress and she has been having problems." Id. at 369. In Dr. McClure's opinion, "gallbladder dysfunction is unlikely." Id. at 370. Plaintiff saw Dr. McClure again on October 19, 2011, when he proposed an Upper Endoscopy, "but [Plaintiff] would prefer not to do that." Id. at 425. Instead, Dr. McClure prescribed Omeprazole, a drug

6

that treats heartburn, stomach ulcers, and gastroesophageal reflux disease, and Prozac. Id.

On April 19, 2011, George Grubbs, Doctor of Psychology, evaluated Plaintiff's records and concluded, "I have reviewed all available [Medical Evidence of Record]s in file. [Application for Appeal] indicated no worsening of MH symptomatology and noted no new MH TS. Despite additional information provided from Bart [Medical Evidence of Record]s, MRH [Medical Evidence of Record]s, McClure [Medical Evidence of Record]s and [claimant], I agree [with] the [Psychiatric Review Technique Form]/[Mental Residual Functional Capacity] completed on 2/24/11." Id. at 378.

On June 27, 2011, Plaintiff's file was evaluated by Dr. Iris Rotker. Id. at 379. After summarizing Plaintiff's recent medical history, Dr. Rotker concluded, "[claimant's] statements regarding worsening [symptoms] are not supported by medical evidence in file and are therefore not credible." Id. He continued, "[t]he [claimaint's] statements concerning the intensity, persistence and limiting effects are not entirely credible in that they are not consistent with and suggest a greater level of severity of impairment than can be shown by the objective medical evidence." Id.

On July 21, 2011, Plaintiff was evaluated at Core Health. Id. at 381-385. Plaintiff listed her chief complaint as "fibromyalgia and [positive] neuropathy," and noted that she had "pulled left side of back a few [weeks] ago." Id. at 382.

On August 4, 2011, Plaintiff went to Northside Medical Professionals where Dr. Bart examined her. Id. at 446. Plaintiff presented for "disability paperwork filled out" and "she [was] wanting something for depression wants antidepressant." Id. at 446. Dr. Bart noted that Plaintiff was "tearful today and states fibromyalgia worse. Is having increased pain and

7

frustration. States hurts every day. Quality of life very poor. Cannot concentrate - states has not been able to balance a check book in some time now. Extremely fatigued. Has also noted depression of late - celexa made her gain weight." Id. Plaintiff was given samples of Savella, a drug that treats fibromyalgia. Id. The "disability paperwork" was a Disability Income Physician's Statement completed for Illinois Mutual Life Insurance Company. Id. at 483. Dr. Bart wrote that Plaintiff had "fibromyalgia, chronic fatigue," and that she did not show symptoms "until 2007." Id. As restrictions, Dr. Bart wrote, "[patient] has chronic pain, depression, fatigue, difficulty concentrating." Id. On October 24, 2011 and November 21, 2011, Plaintiff returned and complained of weight gain. Id. at 442-445. Dr. Bart renewed Plaintiff's prescription for the weight loss medication Phentermine. Id. On February 16, 2012, Dr. Bart wrote Plaintiff a letter "to whom it may concern," and stated that Plaintiff had "a diagnosis of fibromyalgia and chronic pain, fatigue and difficulty concentrating secondary to this." Id. at 456. Dr. Bart wrote that Plaintiff "continues to struggle with this disease process and because of it is unable to work. Has to rest every few minutes, is chronically fatigued and finds it very difficult to concentrate." Id.

On August 4, 2011, Plaintiff also began treatment at Centerstone. Id. at 478-481. On this visit, Plaintiff reported that she worked at Giles Co. Auto Repair Service. Id. Centerstone records reflect that Plaintiff "report[ed] having fibromyalgia [with] chronic fatigue and IBS. [Claimant] meets criteria for [Major Depressive Disorder] recurrent moderate with history of severe episodes beginning in her teen years. She expressed generalized anxiety, OCD and panic [disorder]." Id. at 480.

Plaintiff returned on September 8, 2011, and reported "no improvement." Id. at 476-477. Plaintiff was seen again on September 14, 2011, and she again reported "no improvement." Id. at

474-475. Plaintiff returned on November 15, 2011. Id. at 468-472. Plaintiff was taken off of Fastin, a weight loss drug, and prescribed Prozac. Id. at 468. On February 16, 2012, Plaintiff was treated by Billy Brown. Id. at 458-466. He recorded, "[claimant] is reporting increase in her panic symptoms." Id. at 458. On February 24, 2012, Mr. Brown wrote a letter to Plaintiff's "case manager" at her attorney's office. Id. at 482. Brown'S letter described Plaintiff's self-reported symptoms and concluded: "This letter is not a prediction of Ms. Salisbury's future thoughts, behaviors or emotions. Nor is it declaration for or denial of her ability to function in a work place." Id.

Plaintiff began seeing New Life Physicians on August 19, 2010. Id. at 389. At this appointment, "her biggest complaint [was] exhaustion. States she aches all over and has been gaining weight." Id. Plaintiff was implanted with "pellet(s) of biologically familiar compounded testosterone." Id. at 390. On December 7, 2010, Plaintiff was again evaluated by New Life Physicians. Id. at 386-387. Plaintiff complained of low energy, and was implanted with another BioEquivalent Hormone Pellet. Id. at 386.

On August 31, 2011, Plaintiff began seeing Dr. Rodriguez with CORE Physicians, a treating physician who had last seen Plaintiff in 2007. Id. at 433-435. Plaintiff presented "with a complaint of Fibromyalgia," which was "described as moderate to severe." Id. at 433. Dr. Rodriguez listed the medications Plaintiff had tried and stopped, then prescribed Flexeril - a medication to treat pain and stiffness caused by muscle spasms - and discussed the "role of exercise" in Plaintiff's treatment plan. Id. at 434. Plaintiff returned on October 3, 2011. Id. at 431-432. Plaintiff reported that "[low] dose flexeril helps [especially] with sleep," so Dr. Rodriguez renewed the prescription and "stressed exercise in improving pain and indurance (sic)

and helping to keep weight down." Id.

On February 9, 2012, Plaintiff returned because she "need[ed] a letter for her attorney." Id. at 428-430. On this visit, Plaintiff reported that "flexeril has not helped at low dose," and that she had "anxiety and [obsessive] compulsive disorder." Id. at 428. Dr. Rodriguez changed her prescription to Gabapentin - an anti-convulsant that treats seizures and pain. Id. Dr. Rodriguez's letter was addressed "to whom it may concern," and stated that Plaintiff had "documented fibromyalgia," and "a significant problem with anxiety/depressive disorder with obsessive/compulsive tendencies." Id. at 430. Dr. Rodriguez wrote, "I think it would be difficult for this patient to gainfully employed (sic) at her previous type of work activity." Id.

### B. Conclusions of Law

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

Plaintiff contends that the ALJ erred by: (1) improperly evaluating Plaintiff's credibility; (2) failing to give proper credit to the opinions of Plaintiff's treating physicians, Drs. Rodriguez and Bart; and (3) failing to take into account Plaintiff's obesity. (Docket No. 19-1). Accordingly, Plaintiff maintains that under 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. Id.

Plaintiff contends that in finding that her subjective complaints were not fully credible,

the ALJ did not appropriately address her complaints of pain. (Docket No. 9-1 at 16). When evaluating the entirety of the evidence, the ALJ is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. See, e.g., Walters, 127 F.3d 525, 531 (6th Cir. 1997); and Kirk v. Secretary, 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. Walters, 127 F.3d at 531 (citing Villarreal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. See Walters, 127 F.3d at 531 (citing Bradley v. Secretary, 862 F.2d 1224, 1227 (6th Cir. 1988); cf King v. Heckler, 742 F.2d 968, 974-75 (6th Cir. 1984); and Siterlet v. Secretary, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (see Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994)), and the reasons must be supported by the record (see King, 742 F.2d at 975).

In discounting Plaintiff's credibility, the ALJ specifically cited the lack of objective medical evidence to support Plaintiff's uestimony:

> After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The objective medical evidence does not support the severity of impairment as alleged by the claimant. The claimant alleged constant pain, but there is no objective evidence of any

>significant anatomical structural deformities or nerve root compression. The records indicate only conservative treatment regarding all alleged impairments. The medical record does not support any injury or worsening of existing impairments. The claimant was diagnosed with the alleged impairments several years before applying for disability benefits. She was able to work full time. The claimant is not currently under medical treatment for the alleged mental health disorders. The consultative examinations found little to support the severity of any of the alleged allegations.

(Docket Entry No. 6, Administrative Record at 23).

The ALJ's decision specifically addressed not only the medical evidence, but also Plaintiff's testimony and her subjective claims. Id. Moreover, the ALJ recognized several inconsistencies between the objective evidence and Plaintiff's complaints of pain. The ALJ noted that Plaintiff reported two different employment termination dates. Id. at 19. The ALJ also noted that Plaintiff was diagnosed with several impairments long before she quit working full time, and that the reason for this termination was economic trouble, not her alleged disabilities. Id. In fact, the ALJ noted that Plaintiff searched for other jobs but was unable to find one. Id. at 18. These inconsistencies noted by the ALJ lend support for her finding that Plaintiff's testimony is not fully credible.

Plaintiff next contends that the ALJ erred by rejecting the opinion of Dr. Rodriguez, who had treated Plaintiff since 2007 and gave significant limitations of Plaintiff's ability to work due to her fibromyalgia and psychiatric problems. (Docket No. 9-1 at 12). Plaintiff also argues that the ALJ erred in discounting the opinion of Dr. Bart, Plaintiff's treating physician. Id. at 14. In the Sixth Circuit, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." Howard v. Commissioner, 276 F.3d 235,

240 (6th Cir. 2002) (quoting Harris v. Heckler, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, she is required to articulate some basis for rejecting the opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987).

Regarding Dr. Rodriguez's treatment notes, the ALJ noted that Plaintiff had "only had four visitations in 2007" with Dr. Rodriguez, then "she returned on August 31, 2011, after a four year absence." Id. at 18-19. "During the August visit, he described the fibromyalgia as moderate to severe, but on October 3, it was described as moderate, indicating improvement in the condition. He prescribed medication and exercise for treatment of the claimant's symptoms." Id. Dr. Rodriguez also completed a Medical Source Statement on February 9, 2012. Regarding this, the ALJ wrote, "[t]he undersigned notes Dr. Rodriguez treated the claimant in 2007 and did not treat her for a four-year period. The medical evidence of record documents only two office visits during his most recent treatment of her. His opinion appears to rely heavily upon the claimant's mental condition. He describes her mental disorders as significant, but the medical evidence of record and the claimant's own reported activities of daily living do not support this finding. Taking into account these factors, the undersigned gives the opinions of Dr. Rodriguez some weight." Id. at 22-23.

As to the opinions of Dr. Bart, the ALJ concluded that she "[found] the limitations placed on the claimant by Dr. Bart to be excessive and not supported by the objective medical evidence of record." Id. at 21-22. With respect to the Disability Income Physician's Statement, the ALJ noted that "Dr. Bart's opinion is inconsistent with the medical evidence of record and the claimant's own allegations. The claimant alleges disability beginning in February of 2010. She stated she worked until December of 2009, when she was laid off due to the economy and her

14

boss making cut backs. This conflicts with Dr. Bart's opinion that the claimant was unable to work beginning in December of 200[8]. It appears the doctor relied heavily on the subjective report of symptoms and limitations provided by the claimant." Id.

The ALJ recognized that Dr. Bart was a treating physician, but also noted that "the treatment record reveals the majority of the visits were yearly check-ups, or for reasons not related to the alleged impairments." Id. In addition, "[t]he course of treatment pursued by the doctor has not been consistent with what one would expect from the claimant's alleged impairment. The treatment received for the allegedly disabling impairments was routine and conservative in nature. Additionally, the level of medication prescribed suggests the symptoms are not as severe as alleged. Finally, the doctor's opinion is without substantial support from the other evidence of record. Based on all of these factors the opinion of Dr. Bart is given little weight." Id.

Under the Act's regulations, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. Id. When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord the evaluations of Drs. Rodriguez and Bart controlling weight because their opinions are inconsistent with other substantial evidence of record. Therefore, Plaintiff's argument fails.

15

Plaintiff next asserts that "[t]he ALJ did not adequately evaluate [Plaintiff's] obesity or the exacerbating effects of her obesity on her other physical conditions" as required by the SSA Regulations, specifically SSR 02-1p. (Docket No. 9-1 at 18-19). Yet, the ALJ included obesity as one of Plaintiff's severe impairments, and specifically addressed Plaintiff's obesity in the discussion of applicable listings. Id. at 15, 16. The ALJ wrote, "[w]hen considered in light of SSR 02-01p, the claimant's obesity, whether analyzed individually or in combination with another impairment, does not meet or medically equal any listing." Id. Specifically, the ALJ found that Plaintiff "did not have any significant functional limitations related to her range of motion, strength, or ability to ambulate effectively. The medical record indicates no acute cardiopulmonary process identified." Id. The ALJ also discussed in detail the effects of Plaintiff's obesity on her ability to work, but found that it did not limit her ability to work more than her RFC allows.

In addition, Plaintiff's argument that the ALJ erred by finding Plaintiff's depression and anxiety to be severe impairments but failing to incorporate them into her RFC finding is unavailing. First, the ALJ stated that she found Plaintiff's reports of the severity of these impairments to be inconsistent with the objective medical evidence and Plaintiff's testimony regarding her daily activities. Id. at 23. Moreover, as the ALJ opined in her RFC assessment that Plaintiff "can perform simple and detailed, routine and repetitive tasks in work that is goal oriented rather than production rate or pace work" and "can sustain occasional brief and superficial interaction with the public and frequent brief and superficial interaction with coworkers and ordinary supervision," it is clear that the ALJ did consider Plaintiff's mental impairments in determining her RFC finding to the extent that she discussed Plaintiff's mental

limitations. Id. at 17. Accordingly, Plaintiff's argument regarding this matter also fails.

For these reasons, the Court concludes that Plaintiff's motion for judgmnent on the record should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of March, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge